## DEGREE OF PROOF REQUIRED TO CONVICT OF EMBEZZLEMENT.

### Circuit Court of Cuyahoga County.

### J. T. OTTKE v. STATE OF OHIO.

#### Decided, March 24, 1911.

*Criminal Law—Embezzlement—Evidence.*

The crime of embezzlement is not made out by evidence which might be sufficient to establish the crimes of larceny or obtaining money under false pretenses.

*M. P. Mooney,* for plaintiff in error.
*John A. Cline,* contra.

HENRY, J.; WINCH, J., and MARVIN, J., concur.

Plaintiff in error was convicted of embezzlement. The first of the three counts of the indictment, under which alone Ottke was found guilty, charges that he "on or about the fifteenth of April in the year of our Lord nineteen hundred and ten, and from that date continuously until the present, to-wit, the twenty-eighth day of September, nineteen hundred and ten, at the county aforesaid, was then and there a partner in the firm of Ottke & Pulwitt, a partnership, then and there doing business under the name and style of Ottke & Pulwitt, and the said J. T. Ottke, as such partner was then and there the agent of Mary Higgins; he, the said J. T. Ottke not being then and there a person within the age of eighteen years, and not being then

and there an apprentice, and while acting as agent for the said Mary Higgins, aforesaid certain money of the amount and of the value of seven hundred dollars of the personal property of and belonging to the said Mary Higgins did unlawfully and fraudulently embezzle and convert to his own use, without the assent of the said Mary Higgins, his said employer, and without the assent of any owner or owners of said property, which said personal property had then and there come into the possession and care of the said J. T. Ottke, by virtue of his employment as agent of the said Mary Higgins," etc.

The facts, in brief, are these:

Mrs. Higgins being desirous of purchasing a house and lot, was introduced by her friend, Margaret Payton, a clerk in the real estate office of Pulwitt & Ottke, to the members of that firm, who thereupon negotiated the sale to her for $2,800 of a house and lot belonging to a Mrs. Kirk.

The sale of this property had been entrusted to Pulwitt & Ottke by one Herman Durre, who acting on behalf of and pursuant to instructions from the owner, Mrs. Kirk, had authorized Messrs. Pulwitt and Ottke to sell the same for $2,600 or more, with the privilege of retaining as their commission whatever in excess of that amount they might be able to obtain.   The terms of sale were to be one-half cash down and the remainder secured by mortgage.   Mrs. Higgins being shown the property by Ottke, decided to take the same and pay therefor the sum of $2,800, of which $700 was to be cash down, and $2,100 secured by mortgage.

Thereupon, Mrs. Higgins paid to Ottke, in three several payments, a total sum of $700, $400 of which was paid by the firm of Pulwitt & Ottke, through the former, to Durre, for Mrs. Kirk.   Durre, however, declined to receive the same, because the down payment was not in accordance with the terms stipulated by Mrs. Kirk to him, and by him in turn to Pulwitt & Ottke.

The $400 having been left on his desk or table, against his protest, he subsequently deducted $10 which Pulwitt owed him and drew his check for $390, in favor of Pulwitt & Ottke, who endorsed it with their respective names and cashed it at the bank, where they were identified by Durre for that purpose.

The defendant below testified in his own behalf that the entire $700 including the $390 returned by Durre, was taken by Pulwitt, who decamped with the same. He also testified that Mrs. Kirk had meanwhile authorized Pulwitt & Ottke to close the sale on the terms proposed by them and agreed to by Mrs. Higgins.

Be this as it may, Mrs. Higgins testifies:

"Q. Were you to pay any commission to these men on the purchase of this property? A. Why no, I was not.

"Q. What? A. No, I was not to pay them anything.

"Q. Did you agree to pay them any commission? A. Certainly not.

"Q. Did you know who was to pay any commission that was paid? A. Why the lady that owned the property. I understood that way. They told me."

And again at page 35, she testified:

"Q. Did you have any agreement with Pulwitt or Ottke that you were to pay them a commission for buying this property? A. I did not.

"Q. Did either of them say anything to you about your paying them a commission for services rendered to you? A. No."

From this and all the testimony offered on behalf of the state it is perfectly evident that Pulwitt & Ottke were not her agents, either to buy the property for her, or to receive the money from or for her. She all the while supposed them to be, and they all the while represented themselves to be the agents of the seller. If their representations in this regard were false, they obtained Mrs. Higgins' money by false pretenses, or possibly one or both of them was guilty of the larceny of the money belonging to her, or some part of it. It is clear, however, that they did not embezzle any money entrusted by her to them as her agents or servants in the transaction.

We have grave doubts whether, from the facts in the case, Ottke was guilty of any criminality whatsoever. In any event the verdict and judgment in this case are clearly not sustained by the evidence and the judgment is reversed.